THE STATE v. KNOCK, *Appellant.*

Division Two, February 1, 1898.

1. **Indictment**: TWO CRIMES IN ONE COUNT. An indictment with a count which charges two offenses, yet charged but one of them sufficiently, is not double.

2. ———: REFERENCE TO ABANDONED COUNT. Where the State has elected to proceed upon the second count of an indictment, the second count is not invalid because it refers to, without reciting, the oath of the grand jurors as set out in the abandoned count.

3. **Age of Consent**: INSTRUCTIONS: ACT OF 1895. Defendant was indicted under an act of the General Assembly (Laws 1895, p. 149) for having carnal knowledge of an unmarried female of previously chaste character, between the ages of fourteen and eighteen years. The instructions given by the lower court are set out in full and *held* to be substantially correct. *Held*, also, that under this statute carnal knowledge with a female of a previously chaste character, between fourteen and eighteen years of age, with or without her consent, is criminal.

4. ———: ———: REASONABLE DOUBT. Trial courts are advised to adopt and follow the instruction on reasonable doubt as approved in *State v. Nueslein*, 25 Mo. 111.

5. ———: ———: FORCE. One indicted under the act of the General Assembly, *supra*, should not be acquitted because the evidence shows that force was used to accomplish the carnal knowledge, and an instruction which so declared was properly refused.

6. ———: AFTER CONDUCT. Evidence of the unchaste conduct of prosecutrix *after* she was debauched is not competent in a prosecution under the act of April 8, 1895.

7. ———: EVIDENCE: LETTER. The defendant on a trial for carnally knowing a female of previously chaste character offered in evidence a letter written by the mother of the prosecutrix to defendant offering to ''hush the matter up for $500.'' The evidence was excluded. *Held*, that as the letter was clearly *res inter alios*, it was properly excluded.

*Appeal from Jackson County Criminal Court.*—Hon. JOHN W. WOFFORD, Judge.

AFFIRMED.

*Kagy & Bremermann* for appellant.

(1) The second count of the indictment is assailed because of its duplicity, as it contains allegations which constitute two separate and distinct crimes. Under the act of 1895 the offense is complete without regard to the use of force. An assault signifies force, and if the offense was committed by force, the defendant might be guilty of rape, a crime punishable by death, in the discretion of the jury. Clearly two offenses are charged in this count of the indictment and it can not for that reason stand. (2) The second count being all that is left after the election to proceed under it, is bad, for the reason that it is not complete. It is a fundamental principle of law that each count of an indictment must be complete within itself. *State v. Wagner*, 118 Mo. 626. The words "and the grand jurors aforesaid, on their oaths aforesaid," refer to the first count in the indictment, and were abandoned in the second count. Bliss on Code Pl., sec. 121; *Russell v. Railroad*, 83 Mo. 507; *Cockrill v. Stafford*, 102 Mo. 57. (3) "Sexual intercourse with an unmarried female of previously chaste character, who is between the ages of fourteen and eighteen years, is a violation of the law with or without her consent." This instruction omits an essential element of the offense as defined by the statute. The statute, acts 1895, page 149, makes an offense only in the event that the offender is a "person over the age of sixteen years." (4) This fifth instruction is bad for the reason that it defines a reasonable doubt to be such "doubt to authorize an acquittal upon reasonable doubt alone, must be a substantial doubt of the defendant's guilt with a view to all the evidence in the case and not a mere possibility of the defendant's

innocence.'' *State v. Blue*, 136 Mo. 41. (5) The vice of the seventh instruction is apparent from a mere reading. After telling the jury to take into account the testimony in relation to his character, it qualifies the instruction as follows: ''But if from all the evidence before you you are satisfied beyond a reasonable doubt, as defined in these instructions, that the defendant is guilty, then his previous good character, if shown, can not justify, excuse, palliate or mitigate the offense.'' (6) It was the duty of the court to give proper instructions covering the whole law of the case, and this is true whether counsel ask it or not. *State v. Brown*, 104 Mo. 365; *State v. Patrick*, 107 Mo. 147; *State v. Nelson*, 118 Mo. 124. (7) It was the duty of the court to define chastity which is the *gravamen* of the offense of intercourse with a female between the ages of fourteen and eighteen years ''of previously chaste character.'' If prosecutrix was not previously of ''chaste character,'' no offense was committed. (8) Previous chaste character is the primary element of the crime charged. Without these instructions, telling the jury what previously chaste character means, the jury had a right to and doubtless did hold to the view that the prosecutrix was chaste, unless it appeared from the evidence that she had had sexual intercourse with some man prior to the alleged act of the defendant. Such is not our understanding of the meaning of previously chaste character. *State v. Sharp*, 132 Mo. 165; *State v. Patterson*, 88 Mo. 88; *State v. Hill*, 91 Mo. 429; *State v. Bradenbury*, 118 Mo. 181; Bishop on Stat. Crime, sec. 639; *Wood v. Georgia*, 48 Ga. 288; *Andre v. Iowa*, 5 Iowa, 389; *Boan v. Iowa*, 5 Iowa, 430; *Carpenter v. People*, 8 Barb. 608. (9) The court committed error in permitting the prosecuting attorney to cross-examine the defendant upon matters not brought out on his examination in chief.

R. S. 1889, sec. 4218; *State v. McGraw*, 74 Mo. 573; *State v Porter*, 75 Mo. 171; *State v. Turner*, 76 Mo. 350; *State v. Patterson*, 88 Mo. 129; *State v. Chamberlain*, 89 Mo. 139; *State v. Lewis*, 118 Mo. 79. (10) The letter from Mrs. Holmes was competent as showing the motive of the prosecution, as well as the *animus* of the witness.

*Edward C. Crow*, Attorney-General, and *Sam B. Jeffries*, Assistant Attorney-General, for the State.

(1) The indictment follows the language of the statute and is sufficient. It charges defendant with the commission of the offense in plain and unambiguous terms and fully informs him of the charge. *State v. Wray*, 109 Mo. 598; *State v. Meinhart*, 73 Mo. 563; *State v. Jaeger*, 66 Mo. 175; *State v. Bruis*, 126 Mo. 566. Therefore no error was committed by the trial court in refusing to quash the indictment. (2) The jury was properly instructed on the presumption of innocence, reasonable doubt, the right of defendant to testify in his own behalf, and good character of defendant. As was also the usual and proper precautionary instruction given the jury. *State v. Baker*, 136 Mo. 80. (3) Sexual intercourse with an unmarried female of previous chaste character, who is between the ages of fourteen and eighteen years, is in violation of the law either with or without her consent. Upon this the jury was properly instructed. *State v. Wilcox*, 111 Mo. 569. (4) No error was committed in refusing defendant's instructions. They are either in contravention of law and based upon facts not in evidence or are included and embodied in the instructions given by the court of its own motion. This the court had a right to do, and it was proper that it should be done. *State v. Baker*, 136 Mo. 80; *State v. Jones*, 78 Mo. 278;

*State v. Anderson,* 89 Mo. 312; *State v. Jackson,* 96 Mo. 200; *State v. Parker,* 106 Mo. 217. (5) The court having ruled properly on the introduction of the evidence in the case, and there appearing no reversible error on that account, the contention of defendant on that feature of his motion for a new trial is not subject to serious consideration.

SHERWOOD, J.—The legal basis of this prosecution is the following statute:

"SECTION 1. If any person over the age of sixteen years shall have carnal knowledge of any unmarried female, of previously chaste character, between the ages of fourteen and eighteen years of age, he shall be deemed guilty of a felony, and upon conviction shall be punished by imprisonment in the penitentiary for a term of two years, or by a fine of not less than one hundred dollars nor · more than five hundred dollars, or by imprisonment in the county jail not less than one month or more than six months, or by both such fine and imprisonment, in the discretion of the court.

"Approved April 8, 1895." Laws 1895, p. 149.

The basis of fact is furnished by the statement of the Attorney-General (which on comparison with the record is found to be correct and therefore adopted), to wit:

The prosecuting witness, Katie Lee Holmes, lived with her parents at Jerseyville, in the State of Illinois. She was born on the fifteenth day of May, 1879, and was therefore sixteen years of age at the time the offense was committed upon her. In the latter part of the autumn of 1894 she visited her uncle, the defendant, James Knock, in Kansas City, Jackson county, Missouri. She again visited him and his family in the same city during the months of October, November

and December, 1895. It was while she was upon this last visit that the crime was committed. Defendant lived with his wife in a two-story store building, on the corner of Thirtieth and Wyandotte streets, in Kansas City. On the night of the seventh of October, of the year in question, the defendant's wife left home to visit her sister in Jerseyville, Illinois. Defendant and the prosecuting witness went with her to the railroad station, and after the train had departed, returned to his home, arriving there about 9 o'clock, P. M. About 10 o'clock Miss Holmes retired, occupying the same room she was accustomed to occupy when her aunt was at home. There was no other person in the house save defendant. The defendant occupied a room separate and apart from that in which Miss Holmes slept. The sleeping apartments to which they had respectively retired were on the second floor of the building. After the young lady had gone to sleep she was aroused by the presence of the defendant, who was attempting to get on top of her. He grabbed her hands and held them over her mouth to prevent her screaming. With his knees he forced her legs apart and had sexual intercourse with her. Again, on Thanksgiving day, in November, 1895, defendant had killed a turkey and the blood had ''splashed'' all over the young woman's dress. She went upstairs for the purpose of changing her clothing, and while there commenced combing her hair. Defendant entered the room where she was and told her if she screamed he would kill her. His wife was down stairs getting dinner. He pushed her over on the bed, pulled up her clothing, and using his knees to separate her legs as before, had sexual intercourse with her. She suffered great pain and became very sick. After defendant had accomplished his purpose he told her to ''hurry up and go down stairs.''

On the morning of the seventh day of December, 1895, defendant went into the room in which she was sleeping and again had sexual intercourse with her, under similar circumstances and in about the same manner as the first time. The act was repeated on the morning of the fourteenth and twenty-first days of December, 1895. Upon each occurrence he cautioned her to say nothing about it, threatening and telling her it would go as hard with one as the other. He also told her that if she told anyone he would tell that she was of bad character. She frequently told him she was going home, but he would not agree to it and as she was without any money she could not leave. However, after the last intercourse was had, she wrote to her mother for money to return home, and on the thirtieth day of December left the residence of the defendant for Jerseyville, Illinois. As a result of the criminal connection by defendant with the prosecuting witness, she became pregnant, and on the eighteenth day of August, 1896, at Pacific, Missouri, gave birth to a male child. The prosecuting witness stated that she had never been married; that she had never had intercourse with any person other than defendant, and that he was the father of the child born to her at Pacific, Missouri.

Evidence was also introduced showing that the prosecutrix was possessed of an untarnished character for chastity and virtue in Jerseyville, Illinois. It was attempted to besmirch her character as to the brief period she stopped in Kansas City, but if such evidence were true it does not appear when such reputation was acquired, whether before or after the perpetration of the crime with which defendant is charged. Defendant denied the perpetration of the offense. But it was testified to that he had asked a question which indicated an anxiety on his part whether anything could

be done with a man for committing fornication with a girl who was under the age of eighteen years, where there was no other testimony but the girl's against him. Being tried, defendant was found guilty and his punishment assessed at two years in the penitentiary.

I.    The indictment is in usual and approved form (*State v. Burries*, 126 Mo. 565), and consists of two counts, the second of which is as follows:

"And the grand jurors aforesaid, on their oath aforesaid, do further say and present that James H. Knock, late of the county aforesaid, on the 30th day of November, 1895, at the county of Jackson, State aforesaid, in and upon one Katie Lee Holmes, unlawfully and feloniously did make an assault, and her, the said Katie Lee Holmes, then and there unlawfully and feloniously did carnally know and abuse, he, the said James H. Knock, being then and there a person over the age of sixteen years, and she the said Katie Lee Holmes, being then and there an unmarried female of previously chaste character, between the ages of 14 and 18 years of age, to wit, of the age of 16 years, against the peace and dignity of the State."

On the latter count the State elected to proceed. This count does not charge two crimes nor have any tendency in that direction. Besides, even if a count does charge two offenses, yet charges but one of them sufficiently, it is not double. 1 Bishop, New Crim. Proc., secs. 440, 480. Consequently, no error occurred in overruling defendant's demurrer to this count, based on the ground of duplicity.

II.    Equally untenable is the assertion that because the first count had been abandoned, that therefore the oath recited in the first could not be referred to in the manner as done in the second one. A *defective* count may be thus referred to, *State v. Wagner*, 118 Mo. *loc. cit.* 629, and cases cited, and certainly a good count on

which the State has declined to proceed to trial, may
be equally as useful as a matter of reference. The
same rule prevails here as when a repealed or expired
statute is consulted in order to determine the meaning
of a statute in full life. Sutherland, Stat. Const.,
sec. 288.

III.    The instructions given on behalf of the State
are as follows:

"1.    The court instructs the jury that if you shall
find from the evidence that at the county of Jackson,
and State of Missouri, at any time within three years
next before the 30th day of January, 1897, the defendant
did feloniously assault and carnally know the witness,
Katie Lee Holmes, and that the said Katie Lee Holmes
at the time of said assault is charged to have been
made was over the age of fourteen years and under the
age of eighteen years and that the said Katie Lee
Holmes was at the time an unmarried female of pre-
vious chaste character, and that the defendant was at
the time over the age of sixteen, you will find the de-
fendant guilty, and assess his punishment at imprison-
ment in the penitentiary for a term of two years, or by
imprisonment in the county jail for a term not less
than one month and not more than six months, or by
a fine of not less than one hundred dollars and no more
than five hundred dollars, or by both such fine and im-
prisonment.    Feloniously means wickedly and against
the admonition of the law.

"2.    Sexual intercourse with an unmarried female
of previous chaste character who is between the ages of
fourteen and eighteen years, is a violation of the law,
with or without her consent.

"3.    The jury are the sole judges of the credibility
of the witnesses, and of the weight and value to be
given to their testimony. In determining as to the
credit you will give to a witness, and the weight and

value you will attach to a witness' testimony, you should take into consideration the conduct and appearance of the witness upon the stand, the interest of the witness, if any, in the result of the trial, the motives of the witness in testifying, the witness' relation to or feeling for or against the defendant, or the alleged injured party, the probability or improbability of the witness' statements, the opportunity the witness had to observe and to be informed as to matters respecting which such witness gives testimony, and the inclination of the witness to speak truthfully or otherwise as to matters within the knowledge of such witness. All of these matters being taken into account, with all the other facts and circumstances given in evidence, it is your province to give to each witness such credit and the testimony of each witness such value and weight as you deem proper. If upon a consideration of all the evidence you conclude that any witness has sworn willfully false as to any material matter involved in the trial, you may reject or treat as untrue the whole or any part of such witness' testimony.

"4. The court instructs the jury that the law presumes the innocence and not the guilt of the defendant, and this presumption of innocence attends the defendant throughout the trial, and at the end entitles the defendant to an acquittal unless the evidence in the case, when taken as a whole, satisfies you of defendant's guilt beyond a reasonable doubt, as defined in these instructions.

"5. The court instructs the jury that before you can convict the defendant you must be satisfied of his guilt beyond a reasonable doubt; such doubt, to authorize an acquittal upon reasonable doubt alone, must be a substantial doubt of the defendant's guilt, with a view to all the evidence in the case, and not a mere possibility of the defendant's innocence.

"6.   The court instructs the jury that the defendant is a competent witness in the case, and you must consider his testimony in arriving at your verdict, but in determining what weight and credibility you will give to his testimony in making up your verdict, you may take into consideration as affecting his credibility, his interest in the result of the case, and that he is the accused party on trial, testifying in his own behalf.

"7.   In determining as to the guilt or innocence of the defendant, you should take into account the testimony in relation to his character as a moral man and you should give to such testimony such weight as you deem proper, but if from all the evidence before you you are satisfied beyond a reasonable doubt, as defined in these instructions, that the defendant is guilty, then his previous good character, if shown, can not justify excuse, palliate or mitigate the offense, and you can not acquit him merely because you believe he has been a person of good repute."

These instructions are substantially correct; we discover no reversible error in them.   But it is passing strange why the trial courts can not use the formula for an instruction on reasonable doubt announced and adopted in the *State v. Nueslein*, 25 Mo. 111, and which has stood every test and triumphed over every criticism, instead of making experiments with the criminal law.   *State v. Sacre*, 141 Mo. *loc. cit.* 67, and cases cited.   If a jury can not understand the instruction referred to in *Nueslein's* case, they could not understand any instruction which might be drafted.

IV.   The instructions asked by defendant were properly refused for several reasons.   In the first place, it is not the law, as asserted in defendant's first instruction, that if "*force*" be used, that this exonerates the force-user when charged with the crime mentioned in the act of 1895, *supra*.

As to the other instructions asked by defendant, they were either embraced in those given on behalf of the State, or else did not express the law applicable to the facts.   And besides, the evidence does not show *when* Henderson was seen with the prosecuting witness with his pantaloons open in front.   If *after* the prosecutrix had been debauched, then such evidence would amount to nothing, and hence could not be the foundation for an instruction.

V.  The trial court committed no error in refusing to admit in evidence a letter written by the mother of the prosecutrix to defendant wherein she offered to hush the matter up for $500, as this letter was clearly *res inter alios.   State v. Jaeger*, 66 Mo. *loc. cit.* 180.

Discovering no reversible error in the record, judgment affirmed.

All concur.