## THE STATE v. WILLIAM LETZ, Appellant.

### Division Two, June 8, 1922.

1. **CARNAL KNOWLEDGE:** Evidence Tending to Prove Another Crime. On the trial of defendant on an information charging him with having had carnal knowledge of an unmarried female of previous chaste character between the ages of fifteen and eighteen years, it was not error for the trial court to admit evidence of the details of an autopsy upon the body of such female after her death, although such evidence tended to show that she died as a result of a criminal abortion, where such evidence tended to establish the age of the foetus, which was a relevant fact to establish the date of conception, and, with the other circumstances, tended to prove that defendant had sexual intercourse with such female, as charged in the information, the court having, by instruction, cautioned the jury that such evidence was to be considered by them solely on that charge.

2. ——: **Demurrer to Evidence.** The evidence of defendant's guilt, being clear and convincing, his demurrer to the evidence was properly overruled.

3. ——: **Statements by Deceased Female: Hearsay.** Evidence, offered by defendant, of statements, claimed to have been made by the female to a doctor, attributing her condition to another than defendant and fixing the time of the intercourse at a date when defendant was out of the State, not being a part of *res gestae* nor made *in articulo mortis*, was properly excluded as hearsay.

4. ——: **Instructions for the State.** The instructions given on behalf of the State and set out in the opinion correctly and fairly submitted the case to the jury and no error was committed in giving them.

5. ——: **Defendant's Refused Instructions.** Since the trial court, at defendant's request, instructed the jury on circumstantial evidence, the credibility of the witnesses, the subject of good moral

character, reasonable doubt and the presumption of innocence, it was not error to refuse an instruction to the effect that a suspicion or a strong probability of guilt, or even the greater weight of the evidence, would not warrant a conviction.

6. ——: ——: Circumstantial Evidence. Nor was it error to refuse an instruction to the effect that circumstantial evidence should always be cautiously considered, since the law makes no distinction between direct and circumstantial evidence, and instructions which tend to minimize the effect of circumstantial evidence and prevent the jury from giving it proper consideration, should not be given.

7. ——: ——: Presumption of Innocence. Nor was it error to refuse an instruction to the effect that the presumption of innocence remains with the jury throughout the trial, and unless overcome by competent evidence so convincing as to force the minds of the jurors to no other reasonable conclusion than that of the guilt of the defendant their verdict should be not guilty as charged, inasmuch as the law does not require proof so strong as to force or compel the conviction of guilt, but it is sufficient if the evidence of guilt is so clear and convincing that the theory of innocence is unreasonable.

8. ——: ——: Material Circumstances. Nor was it error to refuse an instruction to the effect that if the female named in the information became pregnant and died from the effects of a criminal operation, this was no evidence that the defendant was guilty of the crime charged, as these were material circumstances, if proven, for the consideration of the jury in determining the guilt or innocence of defendant.

9. ——: Failure to Instruct on Whole Case. An assignment of error that the court failed to instruct on all the law of the case, is too general to save the point for review, particularly in view of the fact that a careful examination of the record fails to disclose any such failure and counsel for appellant have not suggested any point on which the trial court failed to instruct the jury.

10. ——: Argument to Jury. In view of the evidence brought out upon cross-examination of one of the State's witnesses, *Held*, that the argument of counsel for the State was within legitimate bounds.

11. ——: Constitutional Law: Statute Authorizing Court to Assess Punishment. Section 3248, Revised Statutes 1919, does not violate Section 28 of Article II of the Constitution, because it authorizes the trial court, in its discretion, to assess the punishment of a defendant found guilty by the jury of a violation of such statute, within the limits defined in said section. [Following State v. Hamey, 168 Mo. 167.]

Appeal from Wright Circuit Court.— *Hon. C. H. Skinker,* Judge.

AFFIRMED.

*S. B. Warren* and *Lamar & Lamar* for appellant.

(1)   The court erred in not sustaining a demurrer to the evidence. The evidence is wholly insufficient to sustain a conviction for the offense charged. State v. Tracy, 284 Mo. 619; State v. Hollis, 284 Mo. 627; State v. Atkins, 222 S. W. 435; State v. Nave, 283 Mo. 35; State v. Schewkhart, 199 S. W. 205; State v. Ruckman, 253 Mo. 499. (2)   Both the criminal act and the agency of the defendant in the commission of that act must be shown, or a conviction cannot stand. State v. Bass, 251 Mo. 107; State v. Miller, 234 Mo. 558; State v. Crabtree, 174 Mo. 650; State v. Dickman, 78 Mo. 447. (3) It was certainly reversible error to permit the witnesses to go into the harrowing details concerning this criminal operation in Springfield, which resulted in the death of Ethel Reeves. We do not understand how the State can contend that anything further was admissible than to show the condition of the girl at that time, and we cannot understand how or on what theory it can claim that all these details are admissible. This criminal operation is certainly a separate and distinct offense with which defendant is not charged, and detailing its particulars and harrowing details would only prejudice the jury and inflame their minds, and prevent a calm, deliberate consideration of the facts. State v. Harris, 283 Mo. 110; State v. Teeter, 239 Mo. 486; State v. Hyde, 234 Mo. 224. (4)   It should be borne in mind that this record shows that the defendant in this case has always sustained a good reputation, as well as the deceased, and it is impossible and was impossible at the trial to make a record, or put into a record, the disadvantages surrounding the defendant, and the atmosphere, the adverse sentiments, which like a cloud pervaded the court room during the trial.

*Jesse W. Barrett,* Attorney-General, and *Henry Davis,* Assistant Attorney-General, for respondent.

(1) Testimony bearing a close relationship to the facts going to show that defendant committed a crime is competent evidence although it tends to show his participation in another crime. State v. Williams, 183 S. W. 310; State v. Sassaman, 214 Mo. 731; State v. Hyde, 234 Mo. 226; State v. Sherman, 264 Mo. 383. (2) The testimony as to the letters was properly admitted. They were shown to be in the handwriting of the appellant. (3) It was proper to permit the testimony as to the slip of paper seen in the hands of Miss Reeves shortly after she received a letter from appellant. (4) The State sustains no such relation to the party injured as will render his declaration admissible in evidence against the State. State v. Curtis, 70 Mo. 597; State v. Duestrow, 137 Mo. 88; State v. Terry, 172 Mo. 219; State v. Wilson, 250 Mo. 329. (5) A demurrer to the evidence will not be sustained where it leads to a reasonable inference of the guilt of the accused. State v. Gulley, 272 Mo. 484; State v. Jackson, 283 Mo. 18. (6) The instructions given by the court were proper. State v. Knock, 142 Mo. 523; State v. Henderson, 243 Mo. 509; State v. Cook, 207 S. W. 832, 833. (7) It is not error to refuse an instruction which is covered by one given. State v. Connors, 245 Mo. 481; State v. Kebler, 228 Mo. 383; State v. Linn, 223 Mo. 109; State v. Sebastian, 215 Mo. 86. (8) An instruction requiring the jury to cautiously consider circumstantial evidence is properly refused. State v. Talbott, 73 Mo. 357; State v. Bond, 191 Mo. 565. (9) Under the facts in this case it was proper to refuse an instruction that the pregnancy and death of the abused girl is not evidence of the guilt of the appellant. (10) The assignment of error that the court failed to instruct on all the law of the case is too general to save the point for review. State v. Gifford, 186 S. W. 1058; State v. Fleetwood, 190 S. W. 1; State v. Liolios, 225 S. W. 946; Secs. 1267, 4079,

R. S. 1919. (11) The argument of counsel for the prosecution was within the record and in answer to the argument of opposing counsel. It was proper. (12) The verdict was in proper form and is authorized by the laws of this State. Sec. 3248, R. S. 1919; State v. Harvey, 168 Mo. 180; State v. Perrigin, 258 Mo. 237.

HIGBEE, P. J.—The defendant was charged on information with having had carnal knowledge of Ethel Reeves, an unmarried female of previous chaste character between the ages of fifteen and eighteen years, in Wright County, on June 20, 1920, he then being a person over the age of seventeen years. The jury found him guilty as charged, the court assessed his punishment at three years' imprisonment in the penitentiary, and the defendant appealed.

The evidence shows that Ethel Reeves was an unmarried female, eighteen years of age on August 16, 1920, and of previous chaste character; that appellant, who was twenty-eight years of age, visited at her father's residence in Mountain Grove on an average of two or three times a week from about May 1st until August 3, 1920; that no other men kept company with or visited her, nor was she away from Wright County during that period; that her monthly periods ceased and she became pregnant in the month of July, 1920; that on August 3, 1920, appellant left Mountain Grove and went to Montana; that at first he corresponded directly with Miss Reeves; that Miss Riley, a neighbor girl who had been from home for several months, returned on August 23, and Miss Reeves obtained permission to have her mail addressed to Miss Riley, explaining that her correspondent would write his initials, "B. L.," on the envelopes; that on November 24, 1920, Miss Riley received a sealed envelope, postmarked Montana and with plaintiff's initials thereon; that Miss Reeves came to Miss Riley's home and received the envelope. Miss Riley testified: "I did not see her take anything out of it, but when I looked up, she had a

294 Mo.—22

large slip in her hand.'' She saw this was a draft for $150, payable to Ethel Reeves. The following day, which was Thanksgiving Day, November 25th, the two young ladies went to Springfield where Miss Reeves went to a bank and got the draft cashed, after which they went to Dr. Harmon's office. Miss Reeves told Miss Riley she intended to have her side treated. From the Doctor's office, Miss Reeves went to Mrs. Burns's and secured a room. Miss Riley called on Miss Reeves the next day, Saturday, and also on Sunday, and on each day found her in bed. Monday morning Miss Reeves died. Miss Riley saw her body at the undertaker's that afternoon. Dr. Stone, a specialist, testified that he performed an autopsy on the body of Miss Reeves on the same afternoon, November 29th, and found that she had been pregnant. The foetus was in a mangled condition and had passed from the uterus through a hole into the abdominal cavity. He removed the foetus, and from measurements estimated that its age was four and one-half lunar months, or 126 days. The exact date of conception cannot be given. Ten days lee-way, or at most two weeks either way, should be allowed, so, assuming that the foetus died November 26th, he gave it as his opinion that conception took place about the middle of July. He did not weigh the foetus on account of its torn condition and his inability to find all the parts. If the foetus were only four months old, the date of conception would have been as late as August 8th, five days after defendant left Mountain Grove.

Mrs. Reeves, Ethel's mother, testified that Ethel's monthly periods stopped in July. She thought Ethel had taken cold. Ralph Reeves, Ethel's father, saw her at Springfield after she was dead. On the day of the funeral he found a piece of paper, wadded up in the pocket of Ethel's coat. This was a blank deposit slip of the First National Bank, Hobson, Montana. On this was written in the defendant's handwriting the following note:—

"Here you are; will send more if necessary. Better cash at Springfield, Mo. the bankers will not get next in Mt. Grove. I had a hard time getting the money. I am sorry; so you had better go right there and see what you can do. Don't take too great a risk tho. L— to you."

This note, and the envelope with the initials "B. L." above referred to, were shown to be in the handwriting of the defendant. Mr. Reeves also testified that Ethel was not complaining of her side when she went to Springfield; that two or three years before that time she got her side hurt, but he had not heard her complain of it recently. Her body was shipped from Springfield on the evening of November 29th, and the undertaker put Ethel's coat in the coffin box. On cross-examination: "Your daughter was sick two or three days in bed in Springfield and you don't know who handled her clothing during that time? A. No, sir."

Mrs. Reeves, on cross-examination, testified that on the day her daughter went to Springfield, she received a card with her daughter's and the defendant's names on it. In that card it was stated that he, the defendant, was coming back.

The defendant was arrested at Kansas City on his way home. Mrs. Grace Brown, a cousin of Ethel Reeves, was present at the defendant's preliminary hearing. He there told her that if he had been guilty he could have made his get-away at most any point of his journey to Montana, but he didn't; he sent letters and cards to Ethel all along the way. She testified: "I asked him if he sent that check to Ethel for an operation on her side; he didn't deny that he sent it to her. To the best of my remembrance, he said that he sent it for an operation on her side." She had had a bad side for eight or ten years.

The defendant offered to prove by Dr. Daley that about two weeks before Ethel Reeves went to Springfield, she called on him professionally and informed him that she was pregnant; that she was about three months advanced in pregnancy, and that a prominent man then

living in Mountain Grove was responsible for her condition; that her mother did not know of her condition, and that he did nothing to relieve her condition. This was excluded as hearsay on objection by the State.

Dr. Daley testified that in case of an abortion after three months' pregnancy, it is impossible that a physician can tell nearer than fifteen or twenty days of the age of the foetus; that the size varies with different women, and no one can tell to a certainty to a day; that it might vary ten or fifteen days one way or the other, and that fourteen days is usually allowed. By careful examination, the date of conception can be told within ten or fifteen days.

It was shown that defendant was twenty-eight years of age; that he was reared in the neighborhood of Mountain Grove, and that his general reputation for morality was good.

I. It is earnestly insisted that the court erred in permitting the prosecution to introduce the harrowing details concerning the criminal operation in Springfield which resulted in the death of Ethel Reeves. We do not

**Kindred Crime.** see how the court could properly have excluded any of Dr. Stone's evidence, even if it tended to prove that another offense had been committed. It proved the fact of pregnancy, and consequently that she had had sexual intercourse with some one. The age of the foetus was a relevant fact to establish the date of conception. This was corroborated by the testimony of Mrs. Reeves that Ethel's menstruation ceased in July. The testimony of Dr. Stone, with the other circumstances, was admissible as tending to prove that the defendant had sexual intercourse with Miss Reeves, as charged in the information. The evidence shows, without material conflict, that the defendant, and he alone, was a constant visitor at the Reeves home and kept the company of Miss Reeves from the first of May until August 3rd, when he left Mountain Grove for Montana; that he corresponded regularly

with her from that time; at first directly, and then by sending his letters to Miss Riley. Being unable to procure an abortion at home, she evidently appealed to the defendant for money and was advised to go to Springfield. The nature of the correspondence explains why it was carried on secretly. He sent her the draft for $150, and advised her to have it cashed at Springfield so "the bankers will not get next at Mountain Grove." The evidence of the defendant's criminal agency in this double tragedy is too clear to admit of a reasonable doubt. The evidence complained of was admissible as tending to prove the offense charged in the information, even though it tended to prove the commission of another crime. [State v. Hyde, 234 Mo. 200, 225; State v. Sherman, 264 Mo. 374, 383.] The court properly cautioned the jury by Instruction 4, infra, as to the purpose of the admission of the evidence tending to prove the abortion. If defendant desired any further cautionary instruction, he should have requested it.

II. What has been said disposes of appellant's complaint of error in overruling the demurrer to the evidence. The crumpled note found in Ethel's pocket leaves no room to doubt, if it is not a confession of, defendant's paternity of the unborn child. He knew her condition and was sorry. "Will send more if necessary." She was to go to Springfield and see what could be done, but not to take too much risk. "There is a way that seemeth right to a man, but the end thereof are the ways of death." In our view of the case, the evidence of defendant's guilt is clear and convincing. A verdict of acquittal would have been a miscarriage of justice.

*Demurrer to Evidence.*

III. Error is claimed in the exclusion of the evidence of Dr. Daley as to the statement alleged to have been made to him by Ethel Reeves. It is the general rule that in criminal prosecutions the State sustains no

Hearsay.     such relation to the party injured as will render his declaration admissible in evidence against the State. Her statement was no part of the *res gestae,* was hearsay, and was properly rejected. [State v. Curtis, 70 Mo. 594, 597; State v. Duestrow, 137 Mo. 44, 88.] It is only when statements of this character are part of the *res gestae,* or are made *in articulo mortis,* that they are admissible in evidence. [State v. Terry, 172 Mo. 213, 219; State v. Wilson, 250 Mo. 323, 329.]

IV. The court, on behalf of the prosecution, instructed the jury as follows:

"1. The court instructs the jury that if they believe and find from the evidence that the defendant, William Letz, in Wright County, State of Missouri, in the months of June or July, 1920, had carnal knowledge, that is, sexual intercourse, with one Ethel Reeves, and further find from the evidence that at the time the defendant had carnal knowledge of the said Ethel Reeves, he, the defendant, was over the age of seventeen years, and that said Ethel Reeves was then and there an unmarried female of previously chaste character, between fifteen and eighteen years of age, then you should find the defendant guilty.

Instructions Given.

"2. Carnal knowledge, as that term is used in these instructions, means sexual intercourse.

"Before you can find the defendant guilty, you must believe and find from the evidence that the defendant had sexual intercourse with the said Ethel Reeves in Wright County, Missouri, and that at the time he had such sexual intercourse with her, the defendant was over the age of seventeen years, and that said Ethel Reeves was then unmarried and between fifteen and eighteen years of age, and that she was then of previously chaste character, and unless the State has proven all of said facts to your satisfaction and beyond a reasonable doubt, you should find the defendant not guilty.

"3. The court instructs the jury that the words previously chaste character as used in these instructions

do not mean general reputation for virtue and chastity in the neighborhood where Ethel Reeves resided, but do mean that she had not had sexual intercourse with a man prior to the time defendant carnally knew her, if you find he did have such carnal knowledge.

"4. You are cautioned that the defendant is upon trial upon a charge of having had carnal knowledge of Ethel Reeves, as the offense is defined in these instructions, and evidence, if any, which may tend to show that any other offense has been committed was admitted for the sole purpose of proving the guilt or innocence of the defendant under the charge for which he is now on trial, and should be considered by the jury for no other purpose whatever."

The first three instructions correctly and fairly submitted the case to the jury. [State v. Knock, 142 Mo. 515, 523; State v. Henderson, 243 Mo. 503, 509.] We have already said that the court properly cautioned the jury by Instruction 4 as to the purpose of the admission of the evidence as to the abortion.

V. The court, at the request of the defendant, instructed the jury on circumstantial evidence, the credibility of the witnesses, the subject of good character, reasonable doubt, and the presumption of innocence. The appellant, however, complains of the refusal of instructions A, B, C and D.

**Instructions Refused.**

Instruction A is to the effect that a suspicion or a strong probability of guilt, or even the greater weight of the evidence will not warrant a conviction. A similar instruction was given in State v. Avery, 113 Mo. 475, 496. However, the instructions given on reasonable doubt and the burden and quantum of proof were ample for the guidance of the jury.

Instruction B advised the jury that circumstantial evidence should always be cautiously considered. This court has condemned instructions of this character, the law making no distinction between direct and circum-

stantial evidence.  [State v. Talbott, 73 Mo. 347, 355, 357; Culbertson v. Hill, 87 Mo. 553, 554, 556; State v. Bond, 191 Mo. 555, 562, 564.]  Instructions should not be given which have a tendency to minimize the effect of circumstantial evidence and prevent the jury from giving it proper consideration.  [38 Cyc. 1739.]

In 1 Wharton's Law on Evidence (3 Ed.) sec. 8, the learned author says:

"A distinction is frequently made between direct and circumstantial evidence, and it is intimated that to the latter there is to be a higher degree of probability assigned than to the former.  It is difficult, however, to see how what is called 'circumstantial,' or 'indirect,' evidence differs in kind from 'direct,' however great may be the difference in special instances as to the intensity of the proof afforded.  There is no testimony that is direct, if we mean by direct an immediate presentation of a fact observed."

In 1 Wharton's Crim. Ev. (10 Ed.) sec. 11, p. 24, it is said:  "There is no evidence admissible in a court of justice that does not depend more or less on circumstances for credit."  Various illustrations are given in the text and notes.

Instruction C advised the jury that the presumption of innocence remains with the jury throughout the trial, and unless overcome by competent evidence so convincing as to force the minds of the jurors to no other reasonable conclusion than that of the guilt of the defendant their verdict should be not guilty as charged. The court properly refused this instruction; the law does not require proof so strong as to force or compel the conviction of guilt.  It is sufficient if the evidence of guilt is so clear and convincing that the theory of innocence is unreasonable.

Instruction D advised the jury that even though they may find that Ethel Reeves became pregnant, and died from the effects of a criminal operation, this was no evidence that the defendant was guilty of the crime charged.  As has been seen, these were material cir-

cumstances, if proven, for the consideration of the jury in determining the guilt or innocence of the defendant.

VI.   The assignment of error that the court failed to instruct on all the law of the case is too general to save the point for review. [State .v. Dockery, 243 Mo. 592, 599; State v. Liolios, 225 S. W. 941, 946.] All Law of Case. We have carefully examined the record and have been unable to discover wherein the court failed in this respect, nor have appellant's counsel suggested any point on which the court failed to instruct the jury.

VII.   The assistant prosecuting attorney, in his closing argument, said, "Ethel Reeves was sick at Mrs. Burns's two or three days and died without seeing her parents, and is not able to tell her story to the jury." It was objected that this was improper argument. Mr. Reeves had testified to finding the crumpled note in the pocket of Ethel's coat. On cross-examination, he was asked this question: "Your daughter was sick two or three days in bed in Springfield and.you don't know who handled her clothing during that time." We think the prosecuting attorney was within the bounds of legitimate argument in referring to a matter thus drawn out on cross-examination.

Argument to Jury.

VIII.   Appellant insists that Section 3248, Revised Statutes 1919, in authorizing the court to assess the punishment, after having been found guilty by the jury, deprives him of the right of trial by jury guaranteed by Section 28 of Article II of the Constitution of Missouri, which provides: "The right of trial by jury, *as heretofore enjoyed,* shall remain inviolate." Counsel call attention to the fact that a resolution to amend this section by striking out the words italicized was rejected by the convention. See Journal Missouri Const. Con. 1875, vol. 1, p. 288. This contention was denied by this

Punishment: Assessed by Court.

court In Banc in State v. Hamey, 168 Mo. 167, 67 S. W. 620, where the question was thoroughly considered. The conclusion then reached was followed in State v. Perrigin, 258 Mo. 233, 236, 167 S. W. 573, and State v. Johnson, 234 S. W. 794, 795.

Finding no reversible error in the record, the judgment is affirmed. All concur.